# COURT OF ERRORS AND APPEALS,

JULY TERM, 1845.

---

### GARDNER, ASSESSOR OF JERSEY CITY, v. THE STATE.

---

1. The charter of the Paterson & Hudson River R. R. Company provides for the payment of certain taxes to the *State*, and then enacts, "that no further or other tax or impost shall be levied or assessed upon said Company." *Held*, that the tax paid was a commutation for all taxes on such property as might necessarily be held for purposes reasonably incident to the enjoyment of the franchise.

2. That the charter exempts the company and its property held for such purposes from all other taxes, whether assessed for state, or for city or township purposes.

3. The Judges who concurred in the judgment below, excluded from sitting on the review in this court, although no argument had been had below, and no formal opinion delivered.

4. The court of Errors and Appeals is not a court of execution, and upon affirmance of the judgment of the court below, the record must be remitted to be there proceeded on, according to law.

---

The Writ of Error, in this case, brought up the judgment of the Supreme Court, rendered upon a *Certiorari* in the name of the State, against Charles Gardner, assessor, (The President and Directors of the Paterson & Hudson River Rail Road Company, prosecutors,) to which *Certiorari* the said assessor made the following return, viz:

Gardner, Assessor, &c. v. The State.

On Real Estate in Jersey City, on Wayne, Mercer, and Hudson streets, as follows:

| | |
|---|---:|
| For State Tax, | $1 80 |
| For County Tax, | 6 30 |
| For City Tax, | 54 75 |
| | $62 85 |

In and by the eighteenth section of the act entitled " An act to incorporate the Paterson and Hudson River Rail Road Company," passed the 21st January, 1831, it was enacted, that the said company, after the expiration of five years, should pay to the Treasurer of this State, yearly and every year, a tax of one-quarter of one per cent. upon their capital stock paid in, and yearly and every year, after the expiration of ten years, a tax of one-half of one per cent. upon the capital stock so paid in as aforesaid, and that *no further or other tax or impost* should be levied or assessed upon said company. The Supreme Court set aside the assessment, and therefore this writ of error was sued out by the authorities of Jersey City, in the name of the assessor, to review this decision.

Upon moving this cause the question was raised as to which of the Justices of the Supreme Court were entitled to sit on the argument in this court on error. The case was decided in the Supreme Court without argument, in consequence of the point raised having been settled in that court by an opinion delivered in a previous cause. It was held by the court that those judges who sat upon the bench, and concurred in the judgment of the court below, were now excluded under the constitution from sitting upon the review, although no formal opinion had been delivered below. An affirmance or other judgment is a judicial opinion. No Justice of the Supreme Court, who has given a judicial opinion in the cause in favor of, or against an error complained of, (*i. e.* assigned for error,) can sit on error in this court on the hearing, and vote for its affirmance or reversal. He may, however, sit on the argument of preliminary motions, as the striking out an assignment of error, &c.

The CHIEF JUSTICE, and NEVIUS J. having expressed an opinion in the court below, did not sit in this cause. Judge BRICK was absent.

*B. Williamson*, and *P. D. Vroom*, for plaintiff in error.

The matter in dispute between Jersey City and the Rail Road Company is whether the real estate of the Company in that city is subject to taxation. We contend that the exemption in the 18th section of the act incorporating the company, (*Act 21st Jan.* 1831, *Har. Comp.* 326,) that no further tax shall be assessed upon the company, only extends to the tax to be levied by the state upon its franchise. The highway of the company only was exempted, and not its other real estate. The language of the section specifying the tax to be paid by the company for its stock, &c., applies to its franchises, not its visible property. The visible property of the company, beyond its track, is as much subject to taxation as that of individuals.

A corporation is an artificial person, liable to taxation under general language applicable to individuals. 1 *Kyd, Corp.* 317 ; *Cortis* v. *The Kent Water Works*, 7 *B. & C.* 314 ; *Angell & Ames on Corp.* 257, 259 ; *The People* v. *The Utica Ins. Co.*, 15 *John.* 382.

Stock is not the property of the corporation. The exemption is only this, that no further tax shall be imposed on the capital of the corporation, or on the right of transit. The tax upon stock is a tax for privilege, and great inconveniences would follow, if extended further. Banks pay tax upon capital, but this does not exempt banking houses or other visible property from ordinary taxation.

But if the company is exempt from *state* tax, it is still liable to taxes to be assessed for township and city purposes.

Counsel further cited, *Providence Bank* v. *Billings & Pittman*, 4 *Peters*, 561 ; *Elm. Dig.* 31 ; *State* v. *Berry*, 2 *Har. R.* 31 ; 6 *Bac. Abr.* "*Statutes*" (*I.* 2. ;) *Wales* v. *Stetson*, 2 *Mass.* 146 ; *Den* v. *Holmes & Dunham, Pen.* 1050 ; *Gordon* v. *N. B. Bank*, 1 *Halst.* 100.

*W. L. Dayton*, contra.

The same provision is inserted in nearly all the R. R. charters; which corporations, after payment of a large special tax, are exempted from any further or other tax or impost. They are compelled to hold, along the line of the road and at the terminus, considerable real estate for the *purposes* of the franchise. The case does not shew, nor is it pretended, that this company owns a tavern or any thing outside of the charter. It is admitted that the company cannot hold property except for the strict purposes prescribed by law, and necessary for the enjoyment of the franchise. Within this restriction, we rely upon the express words of the charter, and the unanimous opinions of the Supreme Court in three decided cases.

These companies have simply the enjoyment of their franchises, and can only hold the property necessary for that enjoyment. They cannot hold property *ad libitum*, for purposes of speculation. The vast personal property vibrating across the state has no locality, and is therefore compounded for in this mode. The capital stock includes all the property within the state in which it is invested, and if the property were separately taxed, the company would be twice taxed for the same investment.

The charter of this company is a contract, and no further tax can be imposed by the legislature during the continuance of the franchise.

The counsel cited *State* v. *Berry*, 2 *Har.* 81; *Camden & Amboy R. R. Co.* v. *Hillegas*, 3 *Ib.* 11; *Same Co.* v. *Com'rs. of Appeal*, 3 *Ib.* 71; *Worcester* v. *Western R. R. Co.*, 4 *Metc.* 564; *Angell & Ames, Corp.* 260 *et seq.*: 13 *Petersd. Abr.* 33; *The King* v. *The London Gas Light Co.*, 8 *B. & C.* 54; *Wordsworth* on *Joint Stock Companies*, 165 (*Law Lib. Ed.*;) *State* v. *Williams*, 7 *Cranch* 164.

The COURT affirmed the judgment of the Supreme Court. No written opinion was delivered, but the court held that the tax paid was not only a bonus for the chartered privileges of the company, but was also a commutation for such property as might *necessarily* be held for purposes reasonably incident to the enjoyment of the franchise. That the company was exempted from all other taxes, whether assessed for state, for city, or for township purposes.

Engle, Adm'r, v. Cromlin, Adm'r.

It was intimated by some of the judges, in delivering their opinions, that the exemption contemplated by the charter, did not extend beyond such property necessarily, or at any act reasonably incident to the enjoyment of the franchise. That other property, not so incident to the enjoyment of the franchise, not necessary for the purposes contemplated by the charter, as property taken for the payment of debts, &c., did not come within the exemption, and might be liable to ordinary taxation.

*For Affirmance*—The CHANCELLOR, WHITEHEAD, CARPENTER, RANDOLPH, ROBINSON, SPEER, PORTER—7.

*For Reversal*—SCHENCK, SPENCER—2.

*Note.*—Mr. *Dayton* asked the direction of the court as to the practice to be pursued, since the present organization of the Court of Errors and Appeals, upon an affirmance of a judgment on error. The court held that the former practice remained unchanged. That this court is not a court of execution, and that the record therefore must be remitted to the Supreme Court, to be there proceeded on according to law. That the 9th section of the act of 5th April, 1845, (since supplied, *Rev. Stat.* 194,) was not designed to change the practice of the court, but applied to such writs, as it had been customary to issue out of this court, previous to the passage of that act: such as writs of *Certiorari* to bring up records, writs of supersedeas, &c. See *Anon. Spenc. R.* 495; *Rev. Stat.* 194, § 11, 12; *Ib.* 201, § 6.

At the term of January, 1848, in the case of *Carter* v. *Somers & Gleason*, the court quashed a writ of error, because it did not purport to issue out of the Court of Chancery, and because it did not appear that it had been presented to the court to which directed.

CITED in *State* v. *Brannin*, 3 *Zab.* 499 ; *State* v. *Bently, Id.* 537 ; *State* v. *Comm'rs of Mansfield, Id.* 513; *State* v. *Powers*, 4 *Zab.* 402 ; *State* v. *Leester*, 5 *Dutch.* 542 ; *State* v. *Hancock*, 6 *Vr.* 545–548.